the right of appeal. This act was to expire by limitation in 1803, but the cession of Virginia territory including the town of Alexandria as a part of the District of Columbia was accepted by the United States, and the seat of the federal government was removed to the District in December, 1800. In January, 1801, Virginia passed an act continuing the charter until March 4, 1811, and authorizing the bank to transact business in the county of Fairfax. Congress, on February 27, 1801, passed an act that the laws of Virginia, as they then existed, should continue in force in the territory ceded by Virginia for the federal district. On a motion to quash the writ of error, (Mr. Chief Justice Marshall delivering the opinion,) the court held that the charter was a public act, and could be proved as such; that Virginia retained the right to legislate over that part of the District ceded by her until congress exercised its legislative power, and therefore that the Virginia act of January, 1801, continued the corporate existence of the Bank of Alexandria in the District of Columbia, which act, with the other laws of Virginia, was continued in force by congress, (Act Feb. 27, 1801.) But the portion of the act of incorporation taking away from debtors of the bank the right of appeal professed to regulate, and could regulate, only those courts which were established under the authority of Virginia. It could not affect the courts of the United States, or of any other state. Such a peculiar privilege, not necessarily belonging to the bank as a corporation, could not exist in the District, unless specially conferred by congress, so that debtors of the bank had the right of appeal from the decision of the circuit court. The motion to quash the writ of error was therefore overruled. Young v. Bank of Alexandria, 4 Cranch, (8 U. S.) 384. When the cases were heard on the merits, the judgment in Young's Case was affirmed. The opinion of the court, delivered by Mr. Chief Justice Marshall, was as follows: "The writ, being returnable to the court, is returnable the first day of the court. It was known to the legislature of Virginia that the appearance day, for all process, was the day after the term. When, therefore, they directed that a trial should be held at the return term, they must have intended that this case should be an exception to the general rule." Young v. Bank of Alexandria, 5 Cranch, (9 U. S.) 45. Mr. Justice Johnson delivered a separate concurring opinion, (page 54.) In Yeaton's Case, also, the judgment of the circuit court was affirmed. Marshall, C. J., in delivering the opinion of the court, said that by the law of Virginia, prior to the cession of the town of Alexandria to the United States, the indorser of a promissory note was liable only on the implied contract that he would pay the debt if, by due diligence, it could not be obtained from the maker; but if a usage by the bank existed, whereby the indorser was liable absolutely, and such was the understanding under which notes were discounted, the contract of indorsement might make the indorser absolutely liable, though the court did not pass upon this point authoritatively. The court held the indorser absolutely liable under section 20 of the bank charter, and that this applied to an accommodation indorser, for "the consideration moving from the bank to the maker of the note, on the credit of the indorser, charges both the maker and the indorser." Mr. Justice Johnson dissented on the ground that the words in the bank charter relied on by the majority of the court as making the indorser absolutely liable were not enacting words, but words of recital; that the courts of Virginia had decided that the bank could not sue the indorser without proving the maker's insolvency; and that the legislature had not intended to change the common law in this respect. Yeaton v. Bank of Alexandria, 5 Cranch, (9 U. S.) 49.]

## Case No. 858.

### BANK OF ALEXANDRIA v. YOUNG.

[2 Cranch, C. C. 52.][1]

Circuit Court, District of Columbia. July Term, 1812.

NEGOTIABLE INSTRUMENTS—INDORSER'S LIABILITY —NOTICE OF DISHONOR.

1. If the indorser of a note write on the face of it these words, "Credit the drawer," the note and indorsement are not evidence of money had and received by the indorser to the use of the indorsee, who had discounted the note and applied the proceeds to the credit of the maker.

2. The Bank of Alexandria, in 1807, was bound to demand payment of the maker. and give notice to the indorser of the non-payment, before they could maintain an action against him.

[See Magruder v. Union Bank of Georgetown, 3 Pet. (28 U. S.) 87.]

At law. Assumpsit [by Bank of Alexandria] against [Robert Young] the indorser of the note of James and Alexander Smith, dated June 13th, 1807, at fifty-four days, payable on the 6th and 9th of August. Payment was demanded and notice given on the 9th of September. At the bottom of the note was this memorandum, "Credit the drawer."

THE COURT (THRUSTON, Circuit Judge, absent) said that such a note, with such a memorandum on its face, was not evidence of money had and received by the defendant to the use of the plaintiffs, on the count for money had and received.

Mr. C. Simms, for the plaintiffs, contended that it was not necessary, in order to make the indorser liable, that he should have had notice of the non-payment by the makers. By the charter of the bank, (section 20,) the indorser was as much bound to pay the note, at the moment it became payable by the maker, as the maker himself was. The language of Chief Justice Marshall in Yeaton v. Bank of Alexandria, 5 Cranch, [9 U. S.] 49, is very strong to that effect.

Mr. E. J. Lee, contra. The only point decided in that case is, that it is not necessary to sue a solvent maker before suing the indorser. The charter of the Bank of Columbia has the same words as the charter of the Bank of Alexandria, and yet the supreme court, in the case of French v. Bank of Columbia, 4 Cranch, [8 U. S.] 141, have considered it as a case governed by the laws of bills of exchange.

THE COURT (FITZHUGH, Circuit Judge, contra) was of opinion that the bank was bound to demand payment from the maker, and, on his refusal, to give notice thereof to the indorser, before they could maintain an action against him.

[1] [Reported by Hon. William Cranch, Chief Judge.]